IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RALPH ELLIOTT SHAW and, <br> JOAN SANDERSON SHAW, <br><br> Plaintiffs, <br><br> v. <br><br> ANDRITZ INC., et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 15-725-LPS-SRF <br> ) <br> ) <br> ) <br> ) |

David W. deBruin, Esquire, of The deBruin Law Firm, Wilmington, DE. Counsel for Plaintiffs.

Shawn Edward Martyniak, Esquire, of Swartz Campbell LLC, Wilmington, DE. Attorney to be noticed for Defendants.

**MEMORANDUM OPINION**

Dated: December      , 2016
Wilmington, Delaware

**FALLON, MAGISTRATE JUDGE**

## I. INTRODUCTION

Presently before the court in this asbestos-based personal injury action are cross-motions to establish applicable substantive law.[1] (D.I. 84 & 85) Plaintiffs Ralph Elliott Shaw and Joan Sanderson Shaw ("Plaintiffs"), argue that Connecticut law should apply to this case. (D.I. 85) Whereas, Andritz Inc., et al., (collectively, "Defendants") counter that maritime law should govern.[2] (D.I. 84) For the reasons that follow, Plaintiffs' motion to establish substantive law is GRANTED, and Defendants' motion is DENIED.

---

[1] The court will treat the pending motions as non-dispositive motions, which may be resolved by the court pursuant to 28 U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(2). The court does so because the subject of the motions is not one of (nor is it directly analogous to) the pre-trial matters listed in 28 U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(3) that a United States Magistrate Judge must resolve through the issuance of a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(A); D. Del. LR 72.1(a)(3). Furthermore, district courts in a number of jurisdictions treat motions relating to choice of law as non-dispositive motions. *See, e.g., Aparicio v. Baumann,* 2014 WL 223648, at *1 (D. Nev. Jan. 21, 2014) (magistrate judge resolving "motion to determine applicable law"); *Duchesneau v. Cornell Univ.,* 2011 WL 5902216, at *1 (E.D. Pa. Nov. 23, 2011) (magistrate judge resolving "motion to establish applicable law"); *Schoeberle v. United States,* 2001 WL 292984, at *1 (N.D. Ill. Mar. 26, 2001) ("Clearly, in issuing a Memorandum Opinion and Order rather than a Report and Recommendation [the magistrate judge] is signaling that he considers this [motion for choice of law determination] a non-dispositive matter. We agree. While the determination of the choice of law issue in this case will impact the limits of the plaintiffs['] recovery, it will not dispose of the cause of action itself."); *Middleton v. Sutton,* 1995 U.S. Dist. LEXIS 376, at *1 (D.N.H. Jan. 5, 1995) ("The magistrate judge's choice-of-law determination is not dispositive of the plaintiff's cause of action.").

[2] The Parties have agreed that Connecticut substantive law will apply to issues regarding Mr. Shaw's non-naval/non-sea-based employment, and Rhode Island substantive law will apply to issues related to Mr. Shaw's home remodeling work. (D.I. 84)

2

## II. BACKGROUND

### A. Procedural History

Plaintiffs initiated this action by filing a complaint in the Superior Court of Delaware on February 26, 2015. (D.I. 1 at ¶ 1) The complaint asserts various causes of action arising out of Mr. Shaw's alleged exposure to asbestos throughout his employment. (*Id.* at ¶ 2)

On August 21, 2015, the case was removed to this court by Defendant CBS Corporation, pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute.[3] (D.I. 1 at ¶ 6)

On July 15, 2016, the parties notified the court of their dispute concerning the applicable substantive law and requested leave to file legal memoranda on their respective positions. (D.I. 75) The court granted the parties' request on July 21, 2016.

### B. Facts

Mr. Shaw worked as a sheet metal worker for General Dynamics Electric Boat Shipyard ("General Dynamics") in Groton, Connecticut from approximately 1952 to 1954 and 1957 to 1967. (D.I. 1 at ¶ 2) Mr. Shaw alleges that he was exposed to asbestos throughout his employment, at various submarine factories and shipyards. (D.I. 85)

Mr. Shaw predominately worked with metal and sheet metal. (D.I. 85) Mr. Shaw's work consisted of building new submarines, with the exception of two submarines he worked on that returned from World War II ("WWII"). (*Id.*, Ex. 2 at 63:3) He never worked on a submarine that was out to sea. (D.I. 85) Mr. Shaw states that he spent half of his time on docked submarines

---

[3] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

3

and the other half in the sheet metal shop located off the dock. (*Id.*, Ex. 2 at 72:12) Mr. Shaw developed malignant mesothelioma as a result of the alleged exposure. (*Id.*)

### III. LEGAL STANDARD

"Normally, this court would apply the choice of law rules of the forum state—in this case, those of [Delaware]—" to determine what substantive law governs an action. *Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). "However, if the case sounds in admiralty it would be inappropriate to apply [Delaware] law or any other state's law, instead of federal admiralty law." *Id.* See also 28 U.S.C. § 1333(1).[4] Therefore, "[t]he initial step in the choice of law analysis is to determine whether this case 'sounds in admiralty.'" *Gibbs*, 314 F.3d at 131.

### IV. DISCUSSION

This threshold dispute is a question of federal law, which is governed by the law of the circuit in which the district court sits. *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 460 (E.D. Pa. 2011) (citing U.S.C.A. Const. Art. III, § 2; 28 U.S.C. § 1333(1); *In re Asbestos Prods. Liab. Litig. (Oil Field Cases)*, 673 F. Supp. 2d. 358, 362 (E.D. Pa. 2009)). "And it is an important one requiring cognizance of the balance between state and federal authority, because the applicability of maritime jurisdiction results in federal maritime law displacing state law." *Conner*, 799 F. Supp. 2d. at 460 (citations omitted).

"The initial step in the choice of law analysis is to determine whether this case 'sounds in admiralty.'" *Gibbs*, 314 F.3d at 131.

---

[4] Section 1333(1) provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

4

In order for maritime law to apply, a plaintiff's exposure underlying a product's liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce [.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

*Grubart*, 512 U.S. at 534 (internal citations omitted). *See also Gibbs*, 314 F.3d at 131–32.

In the present case, the locality test is not satisfied and, therefore, Connecticut law applies. The alleged exposure occurred on submarines that were in the process of being built, and therefore do not qualify as vessels. (D.I. 85, Ex. 2 at 63:3) Additionally, there is not enough factual support to distinguish Mr. Shaw's work on the WWII submarines between shipbuilding and repair work.

### A. Locality Test

The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. *Grubart*, 513 U.S. at 534. In *Conner v. Alfa Laval, Inc.*, District Judge Robreno (presiding in MDL No. 875—the multidistrict asbestos products liability litigation) explained that the "locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." *Conner*, 799 F. Supp. 2d at 466. "In assessing whether work was on 'navigable waters' (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based

5

work, performed on navigable waters."[5] *Leonard v. CBS Corp.*, 2014 WL 345216, at *1 n. 1 (E.D. Pa. Jan. 28, 2014) (citing *Sisson v. Ruby*, 497 U.S. 358 (1990)). *See also Deuber v. Asbestos Corp.*, 2011 WL 6415339, at *1 n. 1 (E.D. Pa. Dec. 2, 2011) (explaining that a "ship on navigable waters... includes a ship docked at the shipyard" (citing *Conner*, 799 F. Supp. 2d at 466)).

### 1. Whether the incident took place on a vessel

In *Stewart v. Dultra Const. Co.*, Justice Thomas stated a "vessel" is an "artificial contrivance used, or capable of being used, as a means of transportation on water." 543 U.S. 481, 482 (2005). Justice Thomas further stated, however, that the main question is whether the "watercraft's use as a means of transportation on water is a practical possibility or merely a theoretical one." *Id.* at 496. In *Stewart*, the Court looked at two previous cases to help define the term "vessel." In *Cope v. Vallette Dry-Dock Co.*, 119 U.S. 625, 630 (1887), the Court held that a drydock that was a fixed structure and that had been "permanently moored" was not a vessel. Later, in *Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co.*, 271 U.S. 19, 22 (1926), the Court held that a wharfboat with electricity, telephone lines, and cables running from the mainland, gave the impression the wharfboat was in a "permanent location." The *Stewart* Court concluded that a ship that is "at anchor, docked for loading or unloading, or berthed for minor repairs" is still a vessel, whereas a ship "taken permanently out of the water" is no longer a vessel. *Stewart*, 543 U.S. at 494.

The *Stewart* Court explained how a vessel loses its vessel status, however, it did not explain at what point a vessel obtains its vessel status. In 2008, the Fifth Circuit considered at

---

[5] "By contrast, work performed in other areas of the shipyard or on a dock, [ ] such as work performed at a machine shop in the shipyard, ... is land-based work." *Leonard*, 2014 WL 345216, at *1 n. 1 (citing *Conner*, 799 F. Supp. 2d at 460–67).

6

what point a watercraft, in the process of being built, becomes a vessel under the Jones Act.[6] The court held that a "structure under construction remains a non-vessel until it is complete and ready for duty upon the sea." *Cain v. Transocean Offshore USA, Inc.*, 518 F.3d 295, 301 (5th Cir. 2008).

Here, the locality test is not met. Mr. Shaw estimates that he spent fifty percent of his time on docked submarines and fifty percent of his time in the shop located off the dock. (D.I. 85, Ex. 2 at 72:12) Mr. Shaw further explains that everything he did at General Dynamics was on a new construction basis, except for the two WWII submarines. (*Id.* at 63:3) Mr. Shaw does not state how much time he spent on the WWII submarines, but the record reflects that most of Mr. Shaw's time involved working on new construction. (*Id.*) Thus, the locality test is not met for any alleged exposure that occurred on the unfinished submarines, because they do not qualify as vessels.

Furthermore, the WWII submarines do not meet the locality test. In his deposition, Mr. Shaw does not distinguish between exposure that occurred on the WWII submarines as opposed to the submarines being built. The court is also provided with little information regarding the status of the WWII ships.[7] Mr. Shaw only states the WWII submarines were coming out of "mothballs," and that he had to remove and rebuild exhaust blowers and fans. (D.I. 85, Ex. 2 at 62:1–63:2) The court finds the record to be more consistent with shipbuilding activities than

---

[6] The definition of "vessel" is used interchangeably between the Jones Act and general maritime law cases. *See Stewart*, 543 U.S. at 482.

[7] The record does not address whether it was a "practical possibility or merely a theoretical one" that the WWII submarines could be used for transportation at the time of Mr. Shaw's work. *Stewart*, 543 U.S. at 496. Mr. Shaw only states that the submarines were coming out of "mothballs," which means the submarines had been decommissioned at some point. *Mothballs*, DICTIONARY.COM, http://www.dictionary.com/browse/mothballs (last visited Nov. 15, 2016).

with repairs. Therefore, Connecticut law is the appropriate substantive law to apply to the WWII submarines.

Once a watercraft fails to pass the locality test, it is no longer necessary to conduct a connection test analysis. *Grubart*, 513 U.S. at 534 ("In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet *both* a locality test and a connection test.") (emphasis added). Therefore, a connection test analysis is unnecessary.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to establish applicable substantive law is granted, and Defendants' motion to establish applicable substantive law is denied. An Order consistent with this Memorandum Opinion shall issue.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: December 29, 2016

Sherry R. Fallon
United States Magistrate Judge